Caldwell, J.
This is an action brought to enjoin the city of Elyria from repairing the crossing at a point where the Lake Shore Railroad Company’s track crosses over North street in this city, and the whole matter is to be determined by two questions.
First: As to the contract made between the city and the railroad at the time the railroad was established, as to this street and others.
Second: Whether the railroad has gained a right to the exclusive use of its crossing by occupation.
The contract between the city and the railroad is evidenced by an ordinance and the acceptance of it. Th,at constitutes the contract,and the proper construction of that con *50 tract is the first question involved in this case, The ordinance reads:
“Be it ordained by the town council of the town of Elyria, that the Junction Railroad Company” (that is the predecessor,or at least one of them), ‘ ‘shall have the privilege of taking and using for its railroad so much of North,Hickory and Tremont streets in said town of Elyria as said company shalldeem necessary or expedient for the purpose of building its said railroad depot,shops, and all other purposes connected with said railroad, the right of using the materials on said streets for the purpose of building said road, and hereby giving and granting to said railroad company full power and authority over said streets to grade, drain and build its said road, and also the right of using its said road, depots, shops and other fixtures after the same shall be built”.
I do not understand from the argument of the counsel for the railroad company that this is a full and complete license to the railroad company to take any part of these three streets named that it shall deem necessary and expedient; that “deeming” not being limited at all. Bu.t the doctrine as to this North street crossing, is that it was reasonably necessary and expedient for the railroad company to have the exclusive use of that crossing, and that it being reasonably necessary, that the use it has taken and made of it is the necessary use, and that it is necessary it should be the exclusive use in contemplation of the necessities of the road; and that being so, that the entire right on that crossing is in the railroad company, and that the city has no right to restore the street and make it a crossing, and make it subject to two public uses, one as a common highway and the other as a railway.
Then the railroad says, if tbe court should hold, under the facts of this case and the facts that surround the crossing, that it was not necessary for the railroad at that time to take and hold the exclusive use of the same, and is not necessary now considering the interests of the public, *51 •also of the citizens of the town and the public who use the high way, that if it should be held that the railroad company has not the exclusive use by reason of this contract,that then it has it by long use.
And it is a fact that for a great many years after the railroad was built, it was at a much lower grade than it is now, and there was a cut there, and that cut was not so restored that teams could very well pass over the railroad, if at *11. Foot passengers could go across there, and they could go on to the railroad tracks, or they could go on other parts of the •street or cross at this point. The evidence shows that is about the only crossing there was there for a long time — I do not remember distinctly, but we are safe in saying for •twenty-one years.
Now, the railroad company claims that by that means, if not by the first, it has the exclusive use to that crossing.
If the first ground is held against the railroad company, there is not much importance to the second; because, if the railroad under the contract did not take the exclusive use there, it was its duty at that time to restore the street to its former state of usefulness; and if it was not restored, itjis the fault of the railroad company,and the railroad failing to do its duty, it can not then say that because of its failure it’has got the exclusive right there; so that, unless the railroad holds it on the first ground, we see no ground on which it can very well hold it.
The railroad comes into equity, and a party is not favored in gaining rights by his own wrongs or its own neglect of duty in a court of equity.
At the time this ordinance was passed the state law was such that a railroad company and the public authorities ■ controlling the streets and highways of the city, could contract in regard to allowing the railroad the use of the public highways to a certain extent. And one proposition must be admitted by everyone ¡ 'that it was'not the intention on the part *52 ■of the legislature that the public should be deprived from the street any more than necessary.
The streets and the highways are held in tiust; the officers having them in charge are trustees for the public, and they are exempt from liabilities because they are trustees, and because they are apart of the state, and the road system of the state is really a part of the state itself.
The trustees, under the public policy of the state, are not authorized to destroy a street in any way that is not necessary for the good of the public, and they are prohibited from in any way abandoning a street, except as the statute has pointed out that it may be done; that is the construction we think ought to be given to that statute.
The legislature, in passing a law allowing the authorities to contract with a railroad company, did not intend that the other law should be violated, and that the public authorities should unnecessarily giveaway the public use of the highway. We think the intent of the legislature in allowing the authorities of a city to contract with the railroad company in regard to the use of these streets only allowed .the city to contract so far as it was necessary for the railroad to use the streets; whenever we go beyond that, it i® equivalent to the authorities having charge of the streets abandoning them in some other way than is provided by law for abandoning public streets; in some other way than that provided by statute, which is to be done through the courts.
The ordinance formed the contract between the city and the railroad, and it is necessary to construe that contract that the railroad could use these streets so far only has it was necessary for the railroad to use them,and not so’ far as it should deem it necessary; because the city of Elyria had no power to contract beyond the limit the law placed upon it. That being true, if this crossing can be used by both the railroad and the public, then the city authorities could only grant to the railroad a use in common with the public traveling the highway.
*53 What the railroad could deem necessary and expedient is that that is necessary and expedient.
We therefore think that the railroad took an interest in these streets so far as it was necessary for the purpose of its tracks, its depots, and its shops, and we are not called, upon to say what was necessary on any street or place except at the crossing in question, and that necessity is not limited to one track across the street, but to such tracks as are reasonably necessary in the business of the railroad. This crossing is situated very near the point where the railroad always has, and would like to continue to do a large part of its business here in this city, such as switching its cars, handling its freight, and matters of that kind; and therefore it isa crossing the railroad claims that is needed by the company’ to the exclusion of the public upon the road; it is needed for local business in this city. That must be controlled by the word “reasonable”; that is what was contemplated.
We cannot say, after hearing all that has been said in this case, and considering all the facts, and after going as counsel wished us to and seeing the situation, and seeing just what is upon the street, by way of buildings on North street, on both sides of this crossing, and the manner in which the railroad crosses, why this street may not be usecf by the railroad and at the same time be used by the public; and if so, that ought to be done.
As I have alrepdy said, it was not intended that this railroad should take anything away from the public beyond its absolute necessities, or their reasonable requirements.
It would be more convenient and better for the railroad company if it could have the exclusive use of any crossing— of any crossing upon any highway. It would' lessen the danger, it would lessen the hazards of the company, it would make it safer for the public to travel; but at the same time, it would greatly inconvenience the public who travel the highway.
*54 Therefore, in all these cases, convenience and necessity means that convenience and necessity which is reasonable without giving up, unnecessarily, any of the rights of the company, and at the same time having due regard for the convenience of the public.
' It is like any track, any railroad track in the city — a street railroad track, in one sense, is the exclusive right of way of the railroad company; but in another sense, and in a larger sense, it is still a use that is for the public generally, and the public must yield its rights only so far as is necessary to give the railroad company a reasonable opportunity to run its cars, and that is true in regard to all these public highways. This being so, we cannot see why the road may not be crossed by the railroad withoul excluding the public from the highway.
Therefore, looking at it in this way, and we think this is the reasonable view of the matter, we do not think the railroad company ought to be permitted to stop the city from improving that crossing if it wants to do it. While it is the duty of the railroad company to restore the crossing, we do not think the railroad ought to have an injunction restraining the city from making the crossing.
In regard to the second claim, if the railroad did not get the exclusive use in that crossing, if it did not become the absolute proprietor, and the one use is that of the railroad company, then the duty of the railroad company, when it put its tracks across the street, was to restore it to its former state of usefulness. When the railroad was first constructed,its grade was some four feet lower than the street, and the street being but then little used, the company did not restore the street, but constructed a fence across the street. This fence was necessary to prevent persons in the night lime from falling or driving into the cut made by the railroad. The road was not restored for more than twenty-one years, after which the railroad raised its tracks to about *55 the same grade as the street. During none of this time was the public entirely excluded from the crossing. Persons on the street crossed the tracks.
JB. 6r. Johnson and IP. J. Jerome, for Plaintiff.
W. W. Boynton and Lee Stroup, for Defendant.
The railroad had none of this time the exclusive possession; no further than before stated was the public excluded, and the street was, during that time, so little used that the public would not suspect that the railroad intended to make a claim of exclusive use from what it did.
The use was in common, and the railroad never gave any notice to the city, other than failing to restore the crossing, and building the fence, of its intention to exclude its co-user, or to forever deny the right of the public to the crossing.
As a matter of fact, it never had exclusive use of the crossing.
Under the facts, if the possession had been exclusive, we do not think the railroad would be entitled to the relief it asks in this case.
We dismiss the plaintiff’s petition.